**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| ANDREYA MONTRISE (known to IDOC as JOSEPH MURPHY), | |
| *Plaintiff*, | Case No. 3:25-cv-109 |
| v. | **JURY TRIAL DEMANDED** |
| Colman DUNBAR, Derek BRANDT, SANDERS, Troy SLINKARD, MURPHY, Mark HANKS, Cassondra MORGAN, Westley SPILLER, GARCIA, and John DOES #1-3, | |
| *Defendants*. | |

## <u>COMPLAINT</u>

This is an action for money damages and injunctive relief for injuries sustained by Plaintiff Andreya Montrise ("Plaintiff"), known to the Illinois Department of Corrections ("IDOC") as Joseph Murphy (ID# 42534), as a result of non-consensual sexual assault, beatings and coercion in violation of Plaintiff's constitutional and state rights by Defendants Colman Dunbar, Derek Brandt, Sanders, Troy Slinkard, Murphy, Mark Hanks, Cassondra Morgan, Westley Spiller, Garcia, and John Does #1-3[1] in their official capacities as an IDOC employees pursuant to 42 U.S.C. § 1983, the Eighth Amendment of the United States Constitution, and 28 U.S.C. § 1331. The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

---

[1] Plaintiff included first names for all defendants except Sanders, Murphy, and Garcia, as Plaintiff could not reasonably identify the right person with confidence from public records.

**JURISDICTION AND VENUE**

1.      This action arises under the Eighth Amendment of the U.S. Constitution and is brought pursuant to 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities guaranteed to Plaintiff by the laws of the United States.

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1334 and 1367.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. The events giving rise to the claims asserted in this Complaint occurred at Menard Correctional Center (Menard), a prison located within this district.

**PARTIES**

4.      Plaintiff is and was, at all times material herein, a citizen of the United States, a resident of the State of Illinois, and in the custody of the state of Illinois.

5.      Defendant Colman Dunbar is or was a Correctional Officer (C/O) at Menard at all relevant times. Defendant Dunbar is legally responsible for ensuring the safety of inmates in his care.

6.      Defendant Derek Brandt is or was a Lieutenant at Menard at all relevant times. Defendant Brandt is legally responsible for ensuring the safety of inmates in his care.

7.      Defendant MHP John Doe is or was a C/O at Menard at all relevant times. Defendant MHP John Doe is legally responsible for ensuring the safety of inmates in his care.

8.      Defendant TACT team officer Sanders is or was a C/O at Menard at all relevant times. Defendant Sanders is legally responsible for ensuring the safety of inmates in his care.

9. Defendant TAC team officer Troy Slinkard is or was a C/O at Menard at all relevant times. Defendant Slinkard is legally responsible for ensuring the safety of inmates in his care.

10. Defendant TACT team officer John Doe is or was a C/O at Menard at all relevant times. Defendant TACT team officer John Doe is legally responsible for ensuring the safety of inmates in his care.

11. Defendant Murphy (unrelated to Plaintiff) is or was a Sergeant at Menard at all relevant times. Defendant Murphy is legally responsible for ensuring the safety of inmates in his care.

12. Defendant Mark Hanks is or was a Lieutenant at Menard at all relevant times. Defendant Hanks is legally responsible for ensuring the safety of inmates in his care.

13. Defendant Cassondra Morgan is or was a C/O at Menard at all relevant times. Defendant Morgan is legally responsible for ensuring the safety of inmates in her care.

14. Defendant Westley Spiller is or was a C/O at Menard at all relevant times. Defendant Spiller is legally responsible for ensuring the safety of inmates in his care.

15. Defendant Garcia is or was a C/O at Menard at all relevant times. Defendant Garcia is legally responsible for ensuring the safety of inmates in his care.

16. Defendant Menard shift commander John Doe is or was a Lieutenant at Menard at all relevant times. Defendant shift commander John Doe is legally responsible for ensuring the safety of inmates in his care.

## FACTUAL BACKGROUND

17. Plaintiff is a transgender woman with the body and breasts of a woman.

18. Plaintiff uses she/her pronouns to refer to herself, consistent with her gender identity.

19.     As a transgender woman in an all-male correctional institution, Plaintiff is frequently subject to harassment, threat and assault from correctional officers and inmates.

**A. The Rape by C/O Dunbar**

20.     On December 12, 2023, Plaintiff was helping her friend, Latonya Rappaport, who is also a transgender woman and has attempted suicide many times and needs a wheelchair. Upon information and belief, the officers were mad that Plaintiff was helping Ms. Rappaport in the yard.

21.     Upon information and belief, out of retaliation for helping Ms. Rappaport, officers approached Plaintiff about her clothing. The guards were provoking Plaintiff about her clothing and continued to do so while walking her back to her cell. Plaintiff was so upset about the incident that she asked to go see mental health because she was in crisis. C/O Dunbar took Plaintiff from the gallery in West House to mental health office for a crisis evaluation.

22.     While Plaintiff was distraught and waiting to be seen for a crisis evaluation by a mental health professional (MHP), C/O Dunbar forced her to perform oral sex on him against her will. Plaintiff spit his semen on some of her clothing to save as evidence.

23.     When Plaintiff was seen by a male MHP John Doe ("MHP Doe"), Plaintiff reported the rape and asked for a rape kit.

24.     MHP Doe said he would report the rape and get her medical attention and a rape kit. Despite these promises, Plaintiff did not receive a rape kit or additional medical attention.

**B. Assaults and Macing by TACT Team Instead of Medical Attention**

25.     Instead, C/O Dunbar began threatening Plaintiff because she reported the rape to MHP Doe. Lieutenant Brandt and C/O Dunbar took Plaintiff back to her cell in general population, and Plaintiff was not given any additional medical treatment.

26.    A few hours later, upon information and belief, Lieutenant Brandt issued an order for the TACT team to come and get Plaintiff out of her cell.

27.    Plaintiff assumed she was being taken to receive medical attention and a rape kit, but the TACT team was having her cuff up in her cell, which was unusual. The TACT team officers threatened her to comply, so she did.

28.    The TACT team took Plaintiff to wait in a bullpen outside of medical. The TACT team talked to the nurses, but Plaintiff never spoke to any medical provider. Instead of taking her into be seen by medical staff, the TACT team took Plaintiff to the Reception and Classification Center ("R&C") between 3:30 and 5:30 pm. Upon information and belief, camera footage should reveal her transfer into R&C.

29.    Once the TACT team placed Plaintiff in the cell at R&C, they were uncuffing her through the chuck hole (i.e., the opening where food trays are served through the bars) while TACT team officers Slinkard, Sanders, and one other officer ("TACT Team Officer Doe") sprayed Plaintiff with mace and left her in the cell.

30.    Sergeant Murphy was in charge of R&C at that time and, upon information and belief, witnessed and allowed TACT team officers Slinkard, Sanders, and Doe to mace Plaintiff and leave her to writhe in pain, unable to breathe, for more than thirty (30) minutes.

31.    Other inmates in R&C cells, including at least Marcus Jones (IDOC Number unknown), Benjamin Williams (Y60361), and Nathan ("Lexi") Cantrell (Y42600), all experienced the effects of the mace sprayed on Plaintiff and were calling for help from staff.

32.    Another unknown staff member asked Sergeant Murphy to help Plaintiff and the other inmates in R&C who were suffering the effects of the mace. At that time, Sergeant Murphy moved Plaintiff to a nearby cell in R&C because he felt sorry for Plaintiff and her condition.

5

33.     Shortly after Murphy moved Plaintiff to a new cell, TACT team officers Sanders and Slinkard returned to give Plaintiff her property back. They entered Plaintiff's cell but did not cuff her up as before. Instead, TACT team officers Sanders and Slinkard set down her box of property and jumped her, slamming Plaintiff around. These officers acted like Plaintiff was being combative, but Plaintiff was still suffering the effects of the mace. Plaintiff also knew not to fight back against multiple officers. Officers Sanders and Slinkard then cuffed Plaintiff, slammed her head on the floor, and sprayed her again with mace.

34.     TACT team officers Sanders and Slinkard dragged her from the cell in R&C and took her to segregation. Upon arrival, they reported to the Correctional Officers in segregation that Plaintiff assaulted the TACT team, when that was not true.

35.     The next day, on December 13, 2023, Lieutenant Hanks from internal affairs came to speak with Plaintiff about the rape, and Plaintiff explained what happened with the TACT team and the two instances of being maced without provocation or justification.

36.     Plaintiff again asked Lieutenant Hanks for medical attention and a rape kit, but he said no medical attention was provided, allegedly because Plaintiff had refused medical treatment and a rape kit the day before.

37.     Upon information and belief, the TACT team officers that spoke to the medical providers the prior day while Plaintiff was waiting in the bullpen had coerced the medical team to report that Plaintiff was refusing treatment to cover up the rape by C/O Dunbar. In fact, Plaintiff never spoke to anyone in medical on the day of her rape.

38.     Despite explaining this and the rape to Lieutenant Hanks, he did not seek or provide any medical treatment or a rape kit to Plaintiff. Instead, he prepared a written report and forced Plaintiff to initial it without permitting her to read it first.

39.     On the morning of December 14, 2023, nurse Morgan came to give her Plaintiff her hormone patch. Plaintiff again asked for medical treatment and for a rape kit. Nurse Morgan facilitated transfer of Plaintiff to an off-site hospital for such care and testing, more than forty-eight (48) hours after the rape by C/O Dunbar.

40.     Plaintiff was transferred to the off-site hospital with C/O Morgan (a different person from Nurse Morgan) and C/O Spiller. At the hospital, Plaintiff notified hospital staff about the rape and notified them that she had not cleaned up since the rape or from the TACT team assault with mace. In other words, she was still covered in mace and had C/O Dunbar's semen on her shirt.

41.     During the administration of the rape kit and after, C/O Morgan and C/O Spiller were communicating by telephone with Menard shift commander, John Doe ("Shift Commander Doe"), who, upon information and belief, is a Lieutenant. C/O Morgan and C/O Spiller also had the hospital staff speak to Shift Commander Doe by telephone. Upon information and belief, these discussions were regarding the paperwork, the rape kit, and the transport/custody of the same back to Menard.

42.     Plaintiff also told the hospital staff that she was concerned that C/O Morgan and C/O Spiller were following instructions to keep the results of the rape kit from Plaintiff because the rape was by a fellow C/O at Menard, C/O Dunbar. Plaintiff pleaded with the hospital staff to give her the paperwork so she could have the rape kit number for follow-up and pursuit of her claims of assault against C/O Dunbar and so the officers did not destroy the evidence.

43.     Because of the confusion and conflicting instructions from the C/Os and Plaintiff's concerns, upon information and belief, the hospital staff contacted the Illinois attorney general or other similar office requesting guidance on the handling of the rape kit and paperwork. Ultimately,

the hospital staff turned over the rape kit and paperwork to C/O Morgan and C/O Spiller, and at no point did Plaintiff ever see it or have access to it again.

44. Upon return to Menard, C/Os Morgan, Spiller, and Garcia (the gallery officer) refused to give Plaintiff her paperwork or rape kit information and instead returned her to her cell.

### C. Grievance Procedures Relating to the Rape and Retaliation

45. On January 1, 2024, Plaintiff filed emergency grievance no. K4-0124-0255 regarding the rape and the prison's collective failure to provide medical care and retaliation for her reporting the rape.

46. Attached as Exhibit 1 is a true and correct copy of the response to emergency grievance -0255 that Plaintiff received from Menard dated May 9, 2024. The response to the grievance is that it is "resolved; an investigation into the incident is ongoing."

47. On February 22, 2024, Plaintiff filed a second emergency grievance no. K4-0224-1187 regarding the harassment, retaliation, and deliberate indifference by the prison guards following Plaintiff's report of C/O Dunbar's rape.

48. Attached as Exhibit 2 is a true and correct copy of the response to emergency grievance -1187 that Plaintiff received from Menard dated May 29, 2024. The response to the grievance is that it is "mixed; per I/A, an investigation is ongoing into staff misconduct claim (resolved). DR's stand as there is no violation of due process in accordance with DR 504.80 and 504.30. However, the 215 is unsubstantiated and it is to be reduce[d] to 313 (202400318)."

49. Plaintiff interprets responses reflected in Exhibits 1 and 2 as final and that all administrative remedies have been exhausted.

50.     As of the date of this Complaint, Plaintiff has not spoken with anyone in internal affairs about the rape (other than Defendant Hanks on December 13, 2023), nor the Illinois State Police, nor has she seen the results of the rape kit or other documentation by IDOC on the rape.

51.     Plaintiff, through counsel, asked for a copy of the Illinois State Police investigation into the incident. In October 2024, the Illinois Attorney General's office stated that the ISP investigation is ongoing and IDOC does not have any records on the rape kit or results.

### COUNT I
### Excessive Force Under the Eighth Amendment
### by C/O Dunbar Pursuant to 42 U.S.C. § 1983

52.     Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as if fully restated herein.

53.     Defendant C/O Dunbar was at all times, and on December 12, 2023, an employee of the Illinois Department of Corrections at Menard Correctional Center during the events alleged in this Complaint. These events took place under the color of state law.

54.     Defendant C/O Dunbar deprived Plaintiff of her right to be free from assault and battery in the form of forcible sex without consent, and from his position of power and control over her as a correctional officer.

55.     Defendant C/O Dunbar's sexual assault of Plaintiff was particularly heinous as Plaintiff was in a state of crisis and waiting to be seen by a mental health provider at Menard.

56.     The sexual assault by Defendant Dunbar was carried out maliciously and sadistically, rather than as part of a good faith effort to maintain and restore discipline.

57.     Subjecting Plaintiff to sexual assault constitutes excessive force, and the use of such excessive force without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983.

58.     Defendant C/O Dunbar shall be held liable to Plaintiff for his conduct pursuant to 42 U.S.C. § 1983.

59.     As a result of Defendant C/O Dunbar's actions, Plaintiff was harmed and continues to be harmed.

**COUNT II**
**Excessive Force under the Eighth Amendment**
**by Defendants C/O Slinkard, C/O Sanders, and**
**TACT Team Officer John Doe Pursuant to 42 U.S.C. § 1983**

60.     Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as if fully restated herein.

61.     Defendants C/O Slinkard, Sanders, and TACT Team Officer John Doe were at all times, and on December 12, 2023, employees of the Illinois Department of Corrections at Menard Correctional Center during the events alleged in this Complaint. These events took place under the color of state law.

62.     Defendants C/O Slinkard, Sanders, and TACT Team Officer John Doe deprived Plaintiff of her right to be free from assault at least in the forms of: (i) repeatedly and maliciously macing her without provocation or justification, (ii) hitting her and slamming her head and body on the floor, and (iii) dragging her between cells and to R&C. Plaintiff was defenseless during the attacks. At all times during the assaults, Plaintiff was attempting to comply with officers to cuff her through the chuck hole or within the cell without fighting back or defending herself from violence by the TACT team.

63.     The attacks by Defendants C/O Slinkard, Sanders, and TACT Team Officer John Doe were particularly heinous because they were only a few hours after Plaintiff reported to mental health that she was in crisis and had been raped by C/O Dunbar. Upon information and belief, the assaults by Defendants C/O Slinkard, Sanders, and TACT Team Officer John Doe

10

were unprovoked, unjustified, and can only be explained as retaliation for Plaintiff reporting the rape by C/O Dunbar.

64. The assaults by Defendants C/O Slinkard, Sanders, and TACT Team Officer John Doe were carried out maliciously and sadistically, rather than as part of a good faith effort to maintain and restore discipline.

65. Subjecting Plaintiff to assault constitutes excessive force, and the use of such excessive force without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983.

66. Defendants C/O Slinkard, Sanders, and TACT Team Officer John Doe shall be held liable to Plaintiff for their conduct pursuant to 42 U.S.C. § 1983.

67. As a result of the actions by Defendants C/O Slinkard, Sanders, and TACT Team Officer John Doe, Plaintiff was harmed and continues to be harmed.

## COUNT III
**Failure to Provide Medical Care Under the Eighth Amendment
by Defendants MHP Doe, Hanks, Brandt, Slinkard, Sanders,
and TACT Team Officer Doe Pursuant to 42 U.S.C. § 1983**

68. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as if fully restated herein.

69. Following the rape by C/O Dunbar on December 12, 2023, Plaintiff at least reported it to Defendant MHP Doe and Defendant Hanks.

70. Defendants Brandt, Slinkard, Sanders, and TACT Team Officer Doe knew of and/or participated in moving Plaintiff from her cell to the medical center (and back). During that time, one or more of Defendants Brandt, Slinkard, Sanders, and TACT Team Officer Doe spoke with and interfered with Plaintiff's ability to receive a rape kit and medical attention.

11

71. Plaintiff asked Defendants MHP Doe and Hanks for medical care directly, so each was actually aware of a substantial risk of harm to Plaintiff and failed to act or disregarded the risk.

72. Based upon a subsequent conversation with Defendant Hanks, Plaintiff learned that one or more of Defendants Brandt, Slinkard, Sanders, and TACT Team Officer Doe reported that Plaintiff was refusing medical care, including a rape kit, when that was not true.

73. Defendants Brandt, Slinkard, Sanders, and TACT Team Officer Doe each was actually aware of a substantial risk of harm to Plaintiff, at least through taking her to receive medical care then refusing to provide it and failed to act or disregarded the risk.

74. In failing to act and provide necessary medical care for a sexual and physical assault, each of Defendants MHP Doe, Hanks, Brandt, Slinkard, Sanders, and TACT Team Officer Doe demonstrated deliberate indifference to an inmate's objectively serious health condition in violation of the Eighth Amendment, which is actionable under Section 1983.

75. As a result of Defendants' failures to provide medical care, Plaintiff was harmed and continues to be harmed.

**COUNT IV**
**Failure to Intervene Under the Eighth Amendment**
**by Defendants Brandt and Murphy Regarding the TACT Team**
**Assaults and Macing of Plaintiff Pursuant to 42 U.S.C. § 1983**

76. Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as if fully restated herein.

77. Defendant Brandt ordered, permitted, and/or gave access to the TACT team to perform the assaults and macing of Plaintiff on December 12, 2023.

78. Defendant Murphy permitted, gave access to, and/or witnessed the TACT team assaults and macing of Plaintiff on December 12, 2023.

79.     Defendant Brandt knew the conduct he ordered would be carried out by the TACT team, knew it was wrong, and had a realistic opportunity to step forward and prevent his fellow officers from violating Plaintiff's constitutional rights, but instead did nothing.

80.     Defendant Murphy observed this conduct against Plaintiff, and saw the effect the macing was having on Plaintiff and others in the same vicinity. Defendant Murphy heard the screams and calling out by Plaintiff and others in the same vicinity, knew it was wrong, and had a realistic opportunity to step forward and prevent their fellow officers from violating Plaintiff's rights, but instead did nothing.

81.     In failing to act and prevent physical harm to Plaintiff from the assaults and macing by the TACT team, Brandt and Murphy demonstrated deliberate indifference to an inmate's objectively serious health condition in violation of the Eighth Amendment, which is actionable under Section 1983.

82.     As a result of Defendants Brandt and Murphy's failure to intervene, Plaintiff was harmed and continues to be harmed.

### COUNT V
### Interference with Medical Care Under the Eighth Amendment
### by Defendants Spiller, Morgan and Shift Commander Doe Pursuant to 42 U.S.C. § 1983

83.     Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint as if fully restated herein.

84.     Defendants Spiller, Morgan and Shift Commander Doe interfered with Plaintiff obtaining medical care on December 14, 2023 when she left Menard to go to the hospital for a rape kit. Defendants Spiller, Morgan and Shift Commander Doe prevented the medical professionals from administering the rape kit and results thereof in a normal manner, including by phoning officials at Menard and elsewhere seeking to further interfere.

13

85. Defendants Spiller, Morgan and Shift Commander Doe knew their conduct would interfere with Plaintiff's medical care, had a realistic opportunity to step forward and prevent his or her fellow officers from violating Plaintiff's constitutional rights, but instead did nothing.

86. By interfering with medical care of the seriousness and trauma of a rape kit to Plaintiff, each of Defendants Spiller, Morgan and Shift Commander Doe demonstrated deliberate indifference to an inmate's objectively serious health condition in violation of the Eighth Amendment, which is actionable under Section 1983.

87. As a result of Defendants Spiller, Morgan and Shift Commander Doe's interference with medical care, Plaintiff was harmed and continues to be harmed.

## JURY DEMAND

Plaintiff hereby demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Injunctive relief against all Defendants from violating Plaintiff's civil rights;

B. A judgment for compensatory and punitive damages in an amount to be determined at trial, plus reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, against all Defendants;

C. A declaration that civil rights of Plaintiff were violated by each Defendant; and

D. An award of costs and expenses against Defendants; and

E. Any and all other relief this Court deems just and reasonable.

Dated: January 24, 2025

Respectfully submitted,

/s/ *Brent P. Ray*

Brent P. Ray*
KING & SPALDING LLP
110 N Wacker, Suite 3800
Chicago, IL 60606
(312) 764-6925
bray@kslaw.com

Abby Parsons*
KING & SPALDING LLP
1100 Louisiana St., Suite 4000
Houston, TX 77002
(713) 751-3200
aparsons@kslaw.com

Ellen Yeseul Min*
King & Spalding LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309
emin@kslaw.com

*Counsel for Plaintiff,*
*ANDREYA MONTRISE (known to*
*IDOC as JOSEPH MURPHY)*

* *Application for Admission or*
*Admission Pro Hac Vice Forthcoming*

15